UNITED STATES of America ex rel.
Angelo Antonio CANTISANI,
Petitioner-Appellant,

v.

R. J. HOLTON, District Director of Immigration and Naturalization Service of Chicago, Respondent-Appellee.

No. 11972.

United States Court of Appeals
Seventh Circuit.

Oct. 2, 1957.

Rehearing Denied Dec. 4, 1957.

Protagoras D. Maktos, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., John H. Bickley, Jr., Asst. U. S. Atty., Chicago, Ill., of counsel, for appellee.

Before DUFFY, Chief Judge, and FINNEGAN and SCHNACKENBERG, Circuit Judges.

DUFFY, Chief Judge.

Petitioner, detained under a writ of deportation, filed a petition for a writ of habeas corpus in the District Court. The writ was denied. Our concern here is not with the main deportation proceeding.

Petitioner cannot properly claim that he was denied procedural due process. Petitioner entered this country illegally in February, 1949. He was given a hearing by the Immigration authorities on April 16, 1953. He had three separate hearings. Prior to the first hearing he was given on request of counsel, three weeks additional to prepare for the hearing. Later he was given a thirty-day continuance, and after he was ordered deported, he was granted a further extension of thirty days in order to secure evidence. He filed petitions for three writs of habeas corpus in the United States District Court for the Northern District of Illinois. During the pendency of the last hearing, Judge Sullivan granted a continuance so that the immigration authorities could hold a *de novo* hearing pursuant to the provisions of § 243(h) of the Immigration and Nationality Act of 1952 (8 U.S.C.A. § 1253 (h)).

Petitioner is a native and citizen of Italy. His only entry to this country was in February, 1949, at Baltimore, Maryland, from an Italian ship where he had been a stowaway. He testified that he had paid a person in Genoa, Italy, 800,-000 lire in order to be smuggled into this country. At the time of entry, petitioner intended to remain permanently in the United States, and did not have an immigration visa.

Petitioner designated Italy as the country to which he should be deported in the event he was ordered deported pursuant to law. There is no evidence that he has had any connection with any subversive groups either within or outside the United States. There is also no question but that he has been a person of good moral character within the preceding five years, and was statutorily eligible for voluntary departure.

Petitioner was married to an Italian woman in 1932. Three children were born of this marriage in Italy and have been residing with petitioner's wife in that country. No one in the United States is dependent upon him for support. He owns no property in this country. The record shows that he helped support his family in Italy by sending them money from time to time.

The real issue in this case is whether the record discloses an abuse of discretion by the Attorney General. Section 243(h) of the Immigration and Nationality Act of 1952 (8 U.S.C.A. § 1253(h)) provides: "The Attorney General is authorized to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to physical persecution and for such period of time as he deems to be necessary for such reason."

Petitioner attempted to prove largely by letters from officials and residents of the Village of Sassano, Province of Salerno, Italy, that if Petitioner returned to the Village of Sassano he would be subject to persecution and abuse by Communistic elements. As an illustration of such letters which were received and considered by the hearing officer, was a letter from the Mayor of Sassano which read, in part: "Said individual (Petitioner) until the time of his immigration to the United States was a lumberman. As a result of a controversy with the Provincial Chamber of Labor of a communistic shade, became persecuted by some people who in the pretended attitude of defending the rights of the workers, were about to ruin him financially and professionally. The local Communists were after this man for some time. * * *" Other letters as well as testimony of Petitioner disclosed that Communists in Sassano broke Petitioner's leg in 1942, stole some of his lumber and threatened his life. Petitioner insists that his life would be in danger if he returned to the Village of Sassano.

■■ In the field of immigration and nationality, Congress has vested wide discretionary powers in the executive branch of the government. United States ex rel. Leong Choy Moon v. Shaughnessy, 2 Cir., 218 F.2d 316, 318. The Attorney General or his delegate has been given a wide area of discretion in those cases where the alien believes that

he would be subjected to persecution if deported to a specified country. United States ex rel. Dolenz v. Shaughnessy, 2 Cir., 206, F.2d 392, 394. However, where an alien has been accorded procedural due process and his application has received fair consideration, courts may not substitute their judgment for that of the Attorney General or his representative. See, United States ex rel. Ciannamea v. Neelly, 7 Cir., 202 F.2d 289, 293.

■ The comparable section to § 243 (h) in the predecessor statute (§ 23 Internal Security Act of 1950, 64 Stat. 1010) provided: "No alien shall be deported under any provisions of this Act to any country in which the Attorney General shall find that such alien would be subjected to physical persecution." The change in language in the present statute has been interpreted by the courts as indicating an attempt by Congress that in cases where the alien claims he would be subjected to physical persecution, the determination of such claim shall rest in the administrative judgment and the opinion of the Attorney General or his delegate, United States ex rel. Dolenz v. Shaughnessy, 2 Cir., 206 F.2d 392, and United States ex rel. Leong Choy Moon v. Shaughnessy, 2 Cir., 218 F.2d 316, assuming, of course, the alien has been afforded procedural due process and that the hearings as conducted were not manifestly unfair to him.

■ In spite of inferences in some of the unsworn letters, there is no proof in this record that the authorities of the Village of Sassano, admittedly noncommunist, could not afford protection to petitioner. He owns a home there, his wife and three children have resided there continuously. Furthermore, petitioner has been ordered deported to Italy and not to the village of Sassano. There is no proof that other places in Italy would not be safe for petitioner. Judicial notice may be taken that the existing government in Italy is controlled by the Christian Democratic party which has a long record of antagonism to Communism.

■ We hold petitioner has not established that the Attorney General or his designate has been guilty of abuse of discretion in denying Petitioner relief under § 243(h) of the Immigration and Nationality Act of 1952. Also, Petitioner was afforded due process. The District Court was correct in denying the petition for a writ of habeas corpus.

Affirmed.

FINNEGAN, Circuit Judge (concurring).

United States ex rel. Hintopoulos v. Shaughnessy, 1957, 353 U.S. 72, 77 S.Ct. 618, 1 L.Ed.2d 652, decided earlier this year, underscores the scope and nature of discretionary suspension of deportation and for that reason I would mention it when joining in and approving Judge Duffy's opinion. When Congress confers power on a public official in terms of discretion there is little room for judicial interference with the exercise of such authority in the absence of clear abuse. The persistent wave of cases seeking review where discretion has been utilized approach the question in oblique fashion. For the attack should be leveled only when discretion is abused, unless there is an unconstitutional delegation of the discretionary power.